# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA KEATON, | 1:05cv0109 LJO JMD |
| Plaintiff, | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Wanda Keaton ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable John M. Dixon, United States Magistrate Judge, for findings and recommendation to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for disability insurance and SSI benefits on July 1, 2002. AR 69. She alleged disability since March 7, 2002, due to complications from arthritis in her hand

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

and knee.  AR 69.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 41, 42, 43-46, 49, 52-57, 58.  On April 22, 2004, ALJ Laura Speck Havens held a hearing.  AR 24-40.  ALJ Havens denied benefits on June 21, 2004.  AR 15-23.  On November 24, 2004, the Appeals Council denied review.  AR 6-9.

Hearing Testimony

On April 22, 2004, ALJ Havens held a hearing in Stockton, California.  AR 26.  Plaintiff appeared with her attorney, Gina Fazio.  AR 26.  Vocational expert ("VE") Steve Schmidt also appeared and testified.  AR 38-39.

Plaintiff was born on February 27, 1943.  AR 27-28.  She testified that she completed high school and two years of college.  AR 28. She can read a newspaper and do simple adding and subtracting.  AR 28.

Plaintiff fell and broke her arm on March 7, 2002, the date on her disability application.  AR 28.  She had surgery and tried to return to work.  AR 28.  Plaintiff did house cleaning, and ended up with tendonitis in the left and right arms.  AR 28.  In 2003, Plaintiff earned $12,000.00 for her house cleaning work.  AR 28.  In 2002, she earned $7,000.00.  AR 29.  In 2004, she worked three times and earned about $600.00.  AR 29.  She worked in house cleaning from 1997 to 2002 and as a personal care attendant from 1995 to 2001.  AR 29.

Plaintiff testified she suffers from depression and has osteoarthritis.  AR 29.  Plaintiff lives in a house with two friends.  AR 29.  She wakes up between 4:00 and 5:00 in the morning.  AR 29.  She is able to dress and bathe herself without help, complete some household chores, and do her own cooking once a week.  AR 29-30.  She cannot use the vacuum cleaner because the vibration hurts her hands.  AR 30.  When Plaintiff thinks she is better, she returns to cleaning houses.  AR 30.  If she works more than two days in a row, then she feels pain coming back, especially in her hands.  AR 30.  Her hand does not grip and everything slides right through it.  AR 30.

Plaintiff can do laundry.  AR 31.  She can grocery shop with someone.  AR 31.  She does not do yard work.  AR 31.  She enjoys taking pictures and watches television about two hours per

day. AR 31. She sometimes exercises, sitting on a ball for 10 minutes. AR 31-32. She does not smoke or drink. AR 32.

Plaintiff has a driver's license. AR 32. She can drive for about 45 minutes. AR 32. She goes to church, and has quite a few activities through the week. AR 32. She has friends. AR 32.

Plaintiff has problems sleeping, and sleeps about two hours per night. AR 33. Plaintiff testified she attends the Turlock Clinic and sees anyone available. AR 33. She does not see anyone for her depression. AR 33. She takes medications and has side effects. AR 33. Her blood pressure goes up when she takes her allergy pill. AR 33.

Plaintiff can walk for 20 minutes, but then her back starts hurting. AR 33-34. She has a problem with her left ankle. AR 34. It hurts whether she is walking, sitting, or lying in bed. AR 34. She can sit for 20 minutes. AR 34. She can lift approximately three pounds. AR 34. She feels pain in the center of her neck and in her left shoulder and left arm. AR 34. Her right hand hurts constantly along the tendons. AR 34-35. She is right-handed, and never tries to pick up objects larger than a cup with her right hand.. AR 35. She will try to stick her finger in the cup and hold it by the hook. AR 35. At the hearing, she could move her fingers without pain. AR 35. She can feel hot and cold. AR 35. When air hits her hand, it hurts. AR 35. When she is in the car, the heater has to be on so the cold air will not hit her hands. AR 35.

Plaintiff can use a keyboard and has a computer at home. AR 35. She was able to write two books. AR 35. She can stay on the computer for only ten minutes because she gets the "swelling legs and hands." AR 35. The pain in her body feels sharp, very sharp. AR 35. She has pain all of the time, if not one part of the body, then the other. AR 35-36. She rates her pain as an eight on a scale of one to ten. AR 36.

When questioned by her attorney, Plaintiff testified that when she is sitting the lower part of her back and right knee stiffen up and start to hurt. AR 36. She can stand about ten minutes because of her right inside ankle. AR 36. She has an appointment with a doctor for her ankle. AR 36.

In further response to questions from her attorney, Plaintiff testified that she worked as an analyst for an insurance company. AR 36. In that job, she would drive out to job sites. AR 36-

3

37. In addition to driving, a person would bring a tape recorder and camera. AR 37. A person also would bring a scale in case she had to weigh things. AR 37. She would go to the job site where someone is performing a job, record it and write notes. AR 37. She would have to bend down to see what the person is doing so she could report it accurately. AR 37. She cannot get on her knees because her knee does not bend. AR 37. When she got back in front of a computer, she would have to type it up, so the doctor can read it and picture what kind of job the person was doing. AR 37. She testified there is a lot of "keyboard," and she has spent "as much as two days on one." AR 37.

Plaintiff also testified that she has been having severe pain in her jaw, on the left side, from the neck to the temple. AR 37. The pain started about three months before the hearing. AR 37. She testified her doctor did not know what it was so he gave her some medication. AR 37. The medication is not helping and she gets really sharp shooting pains through her ear. AR 38. When she is on the telephone, it is hard for her to hear what people are saying. AR 38. She told her doctor about that. AR 38. She does not know what it is and that is why she is changing doctors. AR 38.

The VE had a chance to review the file and hear Plaintiff's testimony. AR 38. The VE listed Plaintiff's past work and the skill and exertional level. AR 38. He identified Plaintiff's employment as a nursing assistant to be medium and semiskilled, her employment as a home health worker to be medium and semiskilled, her employment as a house cleaner to be medium, semiskilled, and her employment as an analyst to be light, skilled. AR 38-39.

During the course of testimony, ALJ Havens presented the VE with a hypothetical question. AR 39. For the hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age and education. AR 39. The ALJ also asked the VE whether a person who could sit six hours out of an eight-hour day, stand four hours out of an eight-hour day, walk four hours out of an eight-hour day, who required a sit-stand option, who could occasionally carry twenty pounds, frequently carry ten pounds, and who could occasionally climb, balance, stoop, kneel, crouch and

crawl would be able to perform any of the jobs performed by Plaintiff in the past. AR 39. The VE stated they would be.[2] AR 39.

When questioned by Plaintiff's counsel, the VE testified that if the person could just occasionally handle and finger with the right hand "it would eliminate that job." AR 39.

Medical Evidence

On July 25, 2001, Plaintiff saw Nurse Practitioner Gail Faso at the Stanislaus County Health Services Agency ("Health Services") for fatigue and anemia. AR 228. On September 18, 2001, Nurse Faso opined Plaintiff's anemia/fatigue was improving. AR 226.

On January 19, 2002, Plaintiff visited Health Services complaining of left knee pain, which caused her to walk with a limp. Plaintiff was referred for an orthopedic evaluation of her left knee. AR 223.

On March 7, 2002, Plaintiff sought treatment in the emergency room of Emanuel Medical Center because she fell off a chair and fractured her right wrist. AR 174, 175-176, 177-180. On March 19, 2002, Plaintiff underwent outpatient surgery at Doctors Medical Center for application of an external fixator device to her right wrist by Dr. Robert Caton. Plaintiff had a displaced right distal intraarticular radius fracture. AR 145-148, 150.

On April 10, 2002, Plaintiff saw Nurse Faso at Health Services in follow-up for her broken wrist and to request pain medication. She was prescribed Tylenol. AR 221.

On April 23, 2002, Plaintiff saw Dr. Robert Caton of Doctors Medical Center for her wrist. She was admitted for removal of deep retained hardware and an external fixator device from her "left wrist" as an outpatient procedure. AR 129-131. A final pathology report dated April 24, 2002, stated the retained hardware was taken from Plaintiff's right wrist. AR 134.

On August 12, 2002, Plaintiff sought treatment from a physician at Health Services for right wrist pain. She was given samples of "Celebrex." AR 220.

On September 23, 2002, Plaintiff saw Nurse Faso at Health Services. During the examination, Plaintiff complained her right hand was still painful, she had numbness in her fingers and she dropped things. Plaintiff also complained that because she uses her left hand/arm

---

[2] A portion of the VE's response was inaudible for transcription. AR 39.

more she has increased left tenderness and swelling. AR 219. Plaintiff was unable to bend her right knee. Nurse Faso opined Plaintiff had "Tendonitis (?CTS)" in her left arm, right hand and arm pain, numbness in right fingers, anemia, and fatigue. Plaintiff was referred for bone density testing on her right arm. AR 219.

On December 11, 2002, Dr. Suzanne Stone of Health Analysis, Inc. completed a consultive examination of Plaintiff. AR 160-163. Plaintiff complained of a recent right wrist fracture, an old injury to her right thigh causing right knee contracture, sciatica, and hypertension. AR 160. Dr. Stone recorded Plaintiff's history of present illness, including the fracture of her right wrist with persisting mild pain, decreased range of motion and decreased hand grip, pain in her left elbow radiating into her lower arm since using the left arm when her right arm was immobile, low back pain with radiation into the right leg, hypertension for about 4 years, adequately controlled, and a bullet through the right femur bone in 1971 with only about 20 degrees knee flexion but full extension. AR 160.

Dr. Stone opined Plaintiff's physical examination was normal except for decreased range of motion in the right wrist, "presumed mildly decreased flexion" in the right finger joints, mild left elbow tenderness with normal range of motion, and marked decreased flexion in Plaintiff's right knee. AR 162. Dr. Stone further opined Plaintiff should be able to lift and carry ten pounds frequently, twenty pounds occasionally, stand or walk 4 hours in an 8 hour day at ½ hour intervals with 20 minutes rest, and sit without restriction. Dr. Stone determined Plaintiff had moderate exertional limitations on climbing, pushing, balancing, pulling, and reaching, marked exertional limitations on scooping, kneeling, crouching, and crawling. Plaintiff had no problems with gross handling and feeling and mild limitations on fine finger manipulations with her right hand. Plaintiff also had no restrictions of vision, speech or hearing. AR 163.

On January 9, 2003, State Agency Medical physician Sandra Clancey, M.D., completed a Physical Residual Functional Capacity Assessment form. AR 164-171. She opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. AR 165. Plaintiff could push and/or pull without limit, other than as for lifting and/or carrying. AR 165. Plaintiff

should never climb rope or scaffolds, but she could frequently balance, stoop, kneel, and crouch, and occasionally crawl. AR 166. Dr. Clancey also identified Plaintiff's manipulative limitations as limited handling and fingering, including occasional typing but no repetitive/frequent forceful gripping, grasping, wrist torquing or keying/typing with the right hand. AR 167. Plaintiff had unlimited reaching and feeling. AR 167.

On March 12, 2003, Plaintiff sought treatment at Health Services for a bunion and foot pain beginning to interfere with her ambulation. A Health Services provider opined Plaintiff had a bunion on her left foot, a severe hallux valgus deformity with second and third toes overlapping. Plaintiff received a referral to a podiatrist. The provider also noted "CTS" and that Plaintiff still had not been contacted for an appointment. AR 215.

On May 8, 2003, Plaintiff went to urgent care at Health Services complaining of right hand and wrist pain. The treating physician diagnosed right hand pain/strain. AR 212. Diagnostic imaging reviewed by osteopathic doctor David Li, D.O., revealed "generalized osteopenia" in Plaintiff's right hand. AR 214.

On May 18, 2003, Plaintiff sought treatment at Health Services' urgent care facility for a migraine headache that had been ongoing for two days. AR 208-209. Nurse Practitioner Marc Stoner assessed Plaintiff with a tension migraine headache. She was prescribed Nubain and Phenergan. AR 209.

On May 20, 2003, Plaintiff saw Dr. Yelena Lapidus and Dr. Ricks in the Podiatry Clinic at Health Services. Plaintiff complained of foot pain, pressure sores on the left foot, and bilateral bunions with the left appearing bigger than the right. Dr. Lapidus assessed Plaintiff with bunion formation secondary to flat fee and pressure sores, debrided. Surgery was recommended. AR 207.

On May 27, 2003, Plaintiff saw podiatrist Marvin Ricks, D.P.M., in the Podiatry Clinic at Health Services. Plaintiff complained of bunions on both feet, with the left greater than the right. Dr. Ricks assessed bunions bilaterally and recommended bunion surgery. AR 204.

1    On May 27, 2003, Plaintiff underwent diagnostic imaging of her feet for bunions. David
2 Li, D.O., of Health Services found Plaintiff to have hallux valgus deformity of 22 degrees in her
3 right foot and of 28 degrees in her left foot. Dr. Li also found osteopenia in both feet. AR 206.
4    On June 18, 2003, Plaintiff sought treatment at Health Services for a variety of
5 complaints, including a painful right hand and dropping things. The Health Services provider
6 opined she had "Carpal tunnel syndrome" and "Tinel's." AR 203.
7    On July 6, 2003, Plaintiff went to urgent care at Health Services complaining of left ear
8 pain radiating to her jaw/face. AR 210.
9    On August 5, 2003, Plaintiff saw osteopathic doctor Elizabeth Whipkey-Olsen, D.O., in
10 the Podiatry Clinic at Health Services. AR 200-201. Plaintiff visited the clinic for a follow- up
11 appointment regarding her bilateral bunions. Plaintiff complained of left ankle pain for three
12 weeks and continuing bunion pain experienced while walking and lying down and with pressure
13 to the bunion sites. She reported the pain radiated to the top of her foot when walking. X-rays
14 taken of the feet on May 27, 2003, showed bilateral bunion deformities and intermetatarsal
15 angles of 11 degrees. Dr. Whipkey-Olsen assessed Plaintiff with bilateral bunions and arthritis.
16 She prescribed Voltaren and recommended surgery. AR 200.
17    On August 16, 2003, psychiatrist Manolito Castillo, M.D., of Valette & Associates
18 completed an adult psychiatric evaluation of Plaintiff for the Department of Social Services
19 Disability Evaluation Department. AR 181-184. Dr. Castillo observed Plaintiff's mood to be
20 depressed. She was tearful at times when discussing her history of illness. AR 183. Dr. Castillo
21 diagnosed Plaintiff with depressive disorder not otherwise specified per Plaintiff's history. AR
22 183.
23    Dr. Castillo opined Plaintiff had no mental restrictions. AR 183. She had no limitations
24 in her ability to socially interact with others at an age-appropriate level, to understand
25 instructions, to sustain an ordinary routine without sustained supervision, to complete simple
26 tasks, to complete detailed tasks, to complete complex tasks, to concentrate for at least two-hour
27 increments at a time in order to maintain a regular work schedule, to avoid normal hazards and to
28 handle funds. AR 183-184.

On September 9, 2003, State Agency physician Charlotte Bible, M.D., completed a Psychiatric Review Technique form. AR 185-196. Dr. Bible identified Plaintiff's diagnosis of depressive disorder not otherwise specified as a medically determinable impairment. AR 188. Dr. Bible opined Plaintiff's mental impairment was not severe and she had no functional limitations as a result of the impairment. AR 185, 195.

On September 11, 2003, Plaintiff saw Dr. Alan Schaffert for continued complaints of right hand pain and tingling. Dr. Shaffert administered nerve conduction studies of Plaintiff's right arm, which were normal and showed no evidence of median or ulnar neuropathy. AR 199.

On September 12, 2003, Plaintiff underwent bunion surgery on her left foot. Podiatrist Marvin Ricks of Podiatric Medicine-Foot Surgery completed the surgery. AR 243-244. Plaintiff was given a follow-up appointment in four days and a follow-up in the clinic one week later for suture removal. AR 243.

On October 2, 2003, State Agency physician Patrick Bianchi, M.D., completed a Physical Residual Functional Capacity Assessment form based on new information regarding Plaintiff's bunion surgery. AR 231-238. Dr. Bianchi reported Plaintiff had bunion surgery in September 2003 on her left foot and was to have bunion surgery on her right foot. Dr. Bianchi opined Plaintiff would be able to return to light residual functional capacity ("RFC") after 3 months. AR 237. He also opined Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. She was limited in pushing or pulling in both upper and lower extremities. AR 232. She occasionally could climb a ramp, stairs, ladder, rope or scaffolds, and frequently could balance, stoop, kneel, crouch, and crawl. AR 233. She was occasionally limited in her handling and fingering with her right hand. AR 234. She should avoid concentrated exposure to extreme heat or cold. AR 235.

On December 22, 2003, Plaintiff sought treatment at Health Services for right wrist, joint, hand, back and neck pain. She was prescribed medications. AR 242.

On February 2, 2004, Plaintiff sought treatment at Health Services, complaining of increased pain to her left ear and side of face. She was prescribed medication. AR 241.

On March 3, 2004, Plaintiff saw a provider at Health Services for right arm, elbow and wrist pain and recurrent left ear pain. The provider assessed tendinitis/lateral epicondylitis and arthritis. AR 240. Plaintiff was prescribed Tylenol for arthritis and Celebrex. AR 240.

ALJ's Findings

The ALJ determined Plaintiff engaged in substantial gainful activity in 2003 and found her "not disabled" for that calendar year. AR 22. The ALJ also found Plaintiff had a severe impairment of status-post right wrist fracture and osteoarthritis. The ALJ further concluded Plaintiff's depression was "non-severe," and her status-post left bunionectomy was not expected to remain "severe" for twelve months. AR 22. Plaintiff retained the RFC to lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk (with normal breaks) for about 4 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour workday, and do occasional postural activities. The ALJ credited Plaintiff's allegation that she must be able to alternate sitting and standing at will during the workday, but determined Plaintiff had no other exertional or non-exertional limitations. Therefore, the ALJ concluded Plaintiff's RFC corresponded to a narrow range of light work and a wide range of sedentary work. Based on this RFC and the question posed to the vocational expert, the ALJ found that Plaintiff failed to meet the burden of showing that her medical impairments prevented her from returning to her past relevant work as an analyst. AR 22-23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the correct legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g) (2004). Applying the evaluation process in this case, the ALJ found that Plaintiff (1) had engaged in substantial gainful activity during 2003, and must be found "not disabled" for calendar year 2003, but otherwise had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (status-post right wrist fracture and osteoarthritis) based on the requirements in the Regulations. (20 C.F.R. §§ 404.1520(c), 416.920(c) (2004)) ; (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; and (4) can perform her past relevant work as an analyst. AR 22-23.

Plaintiff contends that (1) the ALJ did not fully and fairly review the testimony and (2) the decision is not supported by substantial evidence.

## DISCUSSION

A.  Review of Testimony

Plaintiff argues that the ALJ did not fully and fairly review the testimony because the ALJ failed to give specific, convincing reasons for rejecting her subjective statements. Specifically, Plaintiff argues the ALJ ignored the mandates of SSRs 96-7p and 00-2p and failed to give adequate reasons for rejecting Plaintiff's credibility.

The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Cequerra v. Sec'y of Health and Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* at 958-959 (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959.

First, Plaintiff incorrectly argues that SSRs 96-7p and 00-2p set forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

1    Second, the ALJ noted her obligation to review Plaintiff's credibility pursuant to SSR 96-
2 7p. AR 20. She initially explained Plaintiff's statements were not credible or reliable given the
3 paucity of evidence of ongoing medical treatment. An ALJ is permitted to consider the lack of
4 medical treatment in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).
5 The ALJ also stated the objective medical findings did not support Plaintiff's subjective
6 complaints. AR 21. Although an ALJ cannot disbelieve a Plaintiff's allegations based solely on
7 the medical record, it is certainly a valid consideration. *Rollins v. Massanari*, 261 F.3d 853, 856-
8 857 (9th Cir. 2001).

9    Further, the ALJ discounted Plaintiff's complaints in light of her statements at the hearing
10 regarding her ability to engage in a wide variety of daily activities and her ability to work at the
11 substantial gainful activity level in 2003. AR 21. Plaintiff testified she does laundry, takes
12 pictures, watches television two hours per day, and goes to church and church activities through
13 the week. AR 31-32. Plaintiff also testified she can drive for about 45 minutes, walk for 20
14 minutes, and sit for 10 minutes. AR 32-34. Plaintiff uses a keyboard and was able to write two
15 books. AR 35. If a claimant is able to spend a substantial part of her day engaged in pursuits
16 involving the performance of physical functions that are transferable to a work setting, a specific
17 finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v.*
18 *Commissioner of Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

19    Plaintiff also asserts the ALJ failed to complete a thorough analysis of the testimony,
20 including the third party statement and the Plaintiff's own statement. The Plaintiff argues the
21 ALJ put more sentences into her boilerplate than reporting or analyzing the testimony. An ALJ is
22 not required to discuss all evidence presented. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d
23 1393, 1394-1395 (9th Cir. 1984). Rather, the Secretary must explain why "significant probative
24 evidence has been rejected." *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981). This is not a
25 situation where the ALJ ignored an entire line of significant probative evidence. For reasons
26 already cited, the ALJ explained why Plaintiff's testimony regarding her subjective complaints
27 lacked credibility and reliability. Moreover, the third party statement referenced by Plaintiff is a
28 written statement from Plaintiff's daughter, which essentially corroborated Plaintiff's account of

her pain and daily activities. AR 117-122. As such, the ALJ did not err by failing to discuss the third party statement explicitly. *See Carlson v. Shalala*, 999 F.2d 180 (7th Cir. 1993).

B.       Review of Evidence

Plaintiff argues substantial evidence does not support the ALJ's findings. Plaintiff makes numerous arguments in support of her contention, beginning with her assertion that the ALJ failed to properly review Plaintiff's impairments at Step 2.

        1.       Severity of Impairments

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if her impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520. A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c) (2004). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b) (2004).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step 2 if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basic work activities. SSR 96-3p.

Here, Plaintiff alleges the ALJ failed to consider evidence of several clinical abnormalities that are severe either individually or in combination, including carpal tunnel syndrome, a right femur fracture and surgery, bilateral foot impairments that required surgery,

1  and hand osteopenia. Plaintiff's argument is unconvincing. The evidence she cites for carpal
2  tunnel syndrome is from progress notes dated June 18, 2003, which include only a diagnosis of
3  carpal tunnel syndrome without a discussion of any limitations on her ability to work or the
4  severity of the syndrome. AR 203. The mere diagnosis of an impairment is not sufficient to
5  sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). The
6  evidence she cites for a right femur fracture and surgery are progress notes dated June 18, 2003
7  and July 25, 2001, which contain no information regarding a right femur fracture. AR 203, 228.
8  The July 25, 2001 notes contain a vague reference to "Rt knee replacement," but include no
9  information regarding any physical or functional limitations or Plaintiff's ability to work. AR
10 228. The evidence cited by Plaintiff for bilateral foot impairments identifies Plaintiff's bunions
11 and recommended surgery, her treatment for a tension migraine headache, and progress notes
12 describing Plaintiff's bunion surgery. AR 200, 209, 243. These citations do not describe the
13 effect on Plaintiff's ability to work. Further, the ALJ expressly considered Plaintiff's foot
14 impairments when accepting the opinion of the Disability Determination Services doctor that
15 Plaintiff's status following the bunion surgery would not remain severe for 12 continuous
16 months. AR 21.

17         Plaintiff cites a diagnostic imaging report to support her contention that the ALJ did not
18 review Plaintiff's right hand osteopenia. AR 214. Contrary to Plaintiff's assertion, the ALJ
19 expressly considered the diagnostic report of May 8, 2003, and the diagnosis of "generalized
20 osteopenia" in Plaintiff's right hand. AR 21. The evidence cited by Plaintiff identifies a
21 diagnosis, but does not identify any limitations on her ability to work or any functional
22 limitations. *Key*, 754 F.2d at 1549 (diagnosis alone is not sufficient to support a finding of
23 disability).

24         2.      Opinion of State Agency Physician
25         Next, Plaintiff argues the ALJ improperly accepted the opinion of a Disability
26 Determination Services doctor that the bunion would not last 12 months. To support her claim,
27 Plaintiff contends the bunion lasted longer because surgery was needed in September 2003,
28 radiographs from May 2003 showed bilateral deformities and angulation abnormality, and,

"[t]hereafter, there were ongoing clinical problems with gait, hammertoes and other signs." AR 202, 204, 207, 211, 215. Plaintiff's contentions are unsupported by her citations to the record. Plaintiff first cites August 5, 2003, progress notes regarding discussion of upcoming surgery for bunions. AR 202. She then cites May 27, 2003, podiatry clinic notes discussing surgery for bunions and noting hammertoe, which Plaintiff indicated was "really not much of a problem." AR 204. Plaintiff next cites May 20, 2003, podiatry clinic notes proposing bunion surgery. AR 207. She also cites May 20, 2003 podiatry clinic progress notes discussing bunions, flat feet, and pressure sores-debrided. AR 211. Her final citation is to March 12, 2003, progress notes that included a diagnosis of severe hallux valgus deformity in the left foot and a podiatry referral. AR 215. There is no evidence in the record that these "clinical problems," which were noted <u>before</u> Plaintiff's bunion surgery, would be severe and persistent following Plaintiff's surgery in September 2003.

Plaintiff also argues the ALJ should have sought an evaluation by a consultative examiner to determine whether there was "improvement." In so arguing, Plaintiff contends the ALJ failed to properly develop the record. It is Plaintiff's burden to produce complete and detailed medical records. *Meanel,* 172 F.3d at 1113. An ALJ only has a duty to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ relied on the opinion of a state agency physician regarding Plaintiff's status post-bunionectomy. AR 21, 237. There is no indication that the evidence was controverted or that it was either ambiguous or inadequate to allow for a proper evaluation.

Even if the record was inadequate, the ALJ was not required to seek an evaluation by a consultative examiner. The ALJ may discharge her duty to develop the record in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan,* 242 F.3d at 1150. In reaching her decision, the ALJ accepted supplemental medical evidence from Plaintiff's physicians, including information regarding her September 2003 bunionectomy. AR 239-245. These records do not support Plaintiff's

contention that her condition was expected to remain "severe" for 12 continuous months following her bunion surgery.

3. RFC Finding

Next, Plaintiff argues the RFC finding is contrary to the evidence of record. She contends the ALJ failed to review the evidence as a whole and merely set out a few isolated medical findings.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

Here, the ALJ determined that Plaintiff could lift/carry up to 20 pounds occasionally, 10 pounds frequently, could stand/walk for about 4 hours in an 8-hour workday, could sit for about 6 hours in an 8-hour work day, and could do occasional postural activities. AR 21. In formulating this RFC, the ALJ credited the opinions of consultive examiner, Dr. Susan Stone, and the state agency's opinion. AR 21. The consultive examiner's opinion may constitute substantial evidence because it is based on the examiner's independent findings and observations. *Tonapetyan*, 242 F.3d at 1149. Additionally, in assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(i), 416.913(c), 416.927(f)(2)(i). There are no opinions in the record from Plaintiff's treating physicians to controvert Dr. Stone's opinion or those of the state agency physician.

4. Plaintiff's Past Relevant Work

Plaintiff argues the ALJ incorrectly determined that she could perform her past relevant work. Specifically, Plaintiff contends the hypothetical question posed by the ALJ to the VE was incomplete. "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). The testimony of a VE "is valuable only to the extent that

it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

The ALJ posed the hypothetical of a woman who is 61 with a high school education and two years of college, subject to the restrictions of sitting six hours out of an eight-hour day, standing four hours out of an eight-hour day, walking four hours out of an eight-hour day, requiring a sit-stand option, who can occasionally carry 20 pounds, frequently ten pounds, and occasionally climb, balance, stoop, kneel, crouch and crawl. AR 39. The VE testified Plaintiff could perform her past job as an analyst. AR 21.

Plaintiff contends the hypothetical was improper because it failed to reflect all her limitations. An ALJ is not bound to accept the restrictions presented in a hypothetical question asked by a claimant's counsel. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Instead, an ALJ is "free to accept or reject these restrictions...as long as they are supported by substantial evidence." *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

At the hearing, Plaintiff's counsel questioned the VE to determine whether Plaintiff could perform her past relevant work as an analyst if she could "just occasionally handle and finger with the right hand." AR 39. The VE opined she could not. AR 39. Plaintiff cites the report of Dr. Stone and the report of a non-examining state agency physician to support the limitations in her counsel's hypothetical question. AR 162, 167. These citations to the record do not support Plaintiff's contention that she could just occasionally handle and finger with her right hand. Dr. Stone, the consultive examiner, opined that Plaintiff had only "mild limitations on fine finger manipulations with right hand." AR 163. The non-examining physician opined Plaintiff had limited right handling and fingering and could not perform repetitive, frequent right "forceful gripping/grasping/wrist torquing or keying/typing," but typing was occasionally "ok." AR 167. Plaintiff herself testified she was able to write two books on her computer keyboard. AR 35.

Even assuming the non-examining physician's opinion supports the restrictions posed to the VE by Plaintiff's counsel, the ALJ was entitled to rely on the opinion of the examining physician. The opinion of an examining physician is entitled to greater weight than the opinion

of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984). The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995). The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician. *Pitzer,* 908 F.2d at 506 n. 4; *Gallant,* 753 F.2d at 1454.

Plaintiff also contends the hypothetical was incomplete because the analyst job required bending on a significant basis, which she testified she could not do. AR 37. As with the hand restrictions, the opinion of the consultive examiner noted "marked exertional limitations on stooping, kneeling, crouching, crawling." These limitations are consistent with, and support, the "occasional postural activities" set out in the RFC. AR 21, 162. For reasons already given, the ALJ discounted Plaintiff's credibility and subjective statements to the contrary.

Insofar as Plaintiff asserts her work as an analyst did not constitute past relevant work because it was part time, this argument is unpersuasive. Work experience applies when it was done within the past 15 years, lasted long enough for a claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 1560. Part-time work may be considered substantial activity. *Keyes v. Sullivan*, 894 F.2d 1053, 1056. Although there is some discrepancy in the record, the information Plaintiff submitted shows she worked as an analyst within the last 15 years, either between 1996 and 2001, 1994 and 2000 or 1995 and 1997. AR 83, 87, 109. Plaintiff also submitted that she worked in this position three hours per day, three days a week, earning $65.00 per hour, or that she worked three hours per day, three days per week, earning $45.00 per hour, or that she worked four hours per day, three hours per week, earning $35.00 per hour. AR 83, 91, 112. Plaintiff did not raise this issue at the hearing or attempt to clarify the record. However, in response to her legal counsel's questions, she testified regarding her job duties as an analyst, demonstrating she learned the position. AR 36-37. Accordingly, Plaintiff's testimony, combined with the record, reveal her work as an analyst constitutes past relevant work as it was

done within the last 15 years, lasted long enough for a claimant to learn to do it, and was substantial gainful activity.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Wanda Keaton.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 4, 2007**                              **/s/ John M. Dixon**
                                                       UNITED STATES MAGISTRATE JUDGE